**Jordan K. Cameron (12051)**
 *jcameron@djplaw.com*
**DURHAM JONES & PINEGAR, P.C.**
3301 N Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600
Fax: (801) 375-3865

<u>Attorney for Plaintiff XMission, L.C.</u>

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>Plaintiff,<br><br>vs.<br><br>9 FOUR ONE MEDIA, a Florida company; ABOVE ALL OFFERS CORPORATION, an Oregon corporation; THE AFFILIATI NETWORK, Inc., a Florida corporation; AGORA FINANCIAL, LLC, a Maryland limited liability company; FLUENT, LLC a New York limited liability company; DOES 1-10,<br><br>Defendants. | **COMPLAINT**<br><br>**[REDACTED]**<br><br><br>Case No.: 2:18cv00182 DBP<br><br>Judge Dustin B. Pead |

COMES NOW Plaintiff XMission, L.C. ("XMission"), and complains and alleges the following:

PARTIES, JURISDICTION AND VENUE

1. Plaintiff XMission is a Utah limited liability company with its principal place of business in Salt Lake City, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

2. Defendant 9 Four One Media ("9 Four One") is a Florida business entity sending commercial emails to XMission customers through email servers located in Utah, that contain the tracking domains 941tracking.com and jhwjkr.com.

3. Defendant Above All Offers Corporation ("Above All") is an Oregon corporation sending commercial emails to XMission customers through email servers located in Utah, that contain the tracking domain kahunatrack1.com.

4. Defendant The Affiliati Network, Inc. ("Affiliati") is a Florida corporation sending commercial emails to XMission customers through email servers located in Utah, that contain the tracking domains affiliatitrk.com, and canestrk.com.

5. Defendant Agora Financial, LLC ("Agora") is a Maryland limited liability company sending commercial emails to XMission customers through email servers located in Utah, that contain the tracking domain lfb.org.

6. Defendant Fluent, LLC ("Fluent") is a New York limited liability company sending commercial emails to XMission customers through email servers located in Utah, that contain the tracking domain afftrackr.com, destinationmagma.com, soccertruck.com, and spnccrzone.com.

7. Each of the Defendants sent emails independently, in conjunction with each other and/or by utilizing the same affiliate network or email publlfb.orgishers who are identified as unknown Doe Defendants 1-10.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* (CAN-SPAM Act of 2003), and pursuant

2

to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a).

9.  This Court has personal jurisdiction over the Defendants because the Defendants, and each of them, have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, in part, through the sending of thousands of commercial emails into the state, and the exercise of jurisdiction is reasonable since Defendants should have known that they would be subject to the jurisdiction and laws of the forum state when they sent, or caused the commercial emails to be sent to customers of an email service provider located in Utah.

10. The emails in question evidence each of Defendant's efforts to target recipients in Utah, including sending thousands of spam emails to email addresses including domains that clearly identify the state of Utah such as ████████████████████████████████ ████████████████████████████ ████████████████ and many others.

11. Venue is proper pursuant to 18 U.S.C. §1391, as a substantial part of the unlawful actions by the Defendants, and each of them, occurred in this judicial district.

## GENERAL ALLEGATIONS

12. XMission was founded in 1993 as Utah's first Internet Service Provider ("ISP").

13. From its early days as a private, Utah ISP, to its current role as a global business Internet provider, XMission has expanded its technical offerings to include sophisticated cloud

3

hosting, web hosting, email service and hosting, collaboration tools, business VoIP phone service, and high speed internet connectivity solutions including optical Ethernet, copper and fiber.

14. Throughout its history, XMission has also worked with hundreds of Utah's nonprofit organizations by providing free web hosting services, and by sponsoring a variety of community-based events and facilities.

15. XMission is a widely known and well-recognized ISP in Utah.

16. XMission owns all the servers, routers, and switches on its network through which it hosts and provides its Internet access services for its customers.

17. XMission has an expansive network and infrastructure, which it has had to consistently update, upgrade and augment in order to combat ongoing spam problems.

18. XMission is the sole owner of all its hardware, and has complete and uninhibited access to, and sole physical control over, the hardware.

19. As a legitimate and leading ISP, XMission is a bona fide Internet Access Service ("IAS") as that term defined under 15 U.S.C. §7702(11), 47 U.S.C. §231(e)(4).

20. XMission provides Internet access services to both commercial and residential customers.

21. The email accounts hosted and served by XMission include email accounts owned by third-party customers of XMission, email accounts owned by employees and/or customers of XMission's third-party customers, email account owned by employees of XMission, and also email accounts owned by XMission itself.

22. For purposes of this Complaint, spam is defined as commercial electronic mail messages ("email") that violate the CAN-SPAM Act in one or more ways.

23. Between 2015 and present the Defendants collectively sent at least 51,416 emails to XMission's servers in Utah and directed at XMission's customers.

24. Defendant 9 Four One is responsible for at least 15,812 emails.

25. Defendant Above All is responsible for at least 12,094 emails.

26. Defendant Affiliati is responsible for at least 3,914 emails.

27. Defendant Agora Financial is responsible for at least 9,455 emails.

28. Defendant Fluent is responsible for at least 10,141 emails.

29. Based on XMission's analysis and review of the emails to date, many of them are unlawful spam.

30. The spam emails independently and collectively adversely affected XMission, and independently and collectively contributed to an overall spam problem suffered by XMission during the time frame of the emails in question.

31. Each of the Defendants is an "initiator" of the spam email messages as they either transmitted or procured the transmission of the emails in question as such term is defined in 15 U.S.C. § 7702 and 7706(g)(2) by sending the emails themselves with actual knowledge that the emails violate the CAN-SPAM Act or by consciously avoiding knowing that the emails violate the CAN-SPAM Act, by hiring others to prepare and send the emails for them with actual knowledge that the emails violate the CAN-SPAM Act or by consciously avoiding knowing that the emails violate the CAN-SPAM Act, or by turning a blind eye to the actions of their marketing affiliates and failing to inquire and confirm that the emails comply with the law.

32. On information and belief, the Defendants individually or acting in concert with each other, sent additional spam emails that XMission has been unable to connect directly with them due to the misleading nature of the information in the emails.

33. Each of the emails is a commercial message and contains commercial content.

34. The emails, and each of them, were received by XMission on its mail servers located in Utah.

35. Throughout its business, XMission has expended well in excess of $3,000,000 in hardware acquisition, maintenance and related expenses to increase capacity to deal with increased spam and related harm, spam filtering expenses, and employee time in dealing with problems caused by its receipt of Spam generally.

36. XMission expends approximately $100,000 to $200,000 per year in dealing with spam related issues and associated employee time, exclusive of attorney fees.

37. The harm XMission continues to suffer, as the result of its collective spam problem is much more significant than the mere annoyance of having to deal with spam or the process of dealing with spam in the ordinary course of business (i.e., installing a spam filter to discard spam).

38. The harm XMission suffered, and continues to suffer, is manifested in financial expense and burden significant to an ISP; lost employee time; lost profitability; the necessity to purchase and dedicate equipment specifically to process spam that could otherwise be dedicated providing internet access services; harm to reputation; and customer and email recipient complaints relating to spam generally.

39. Specifically the emails in question resulted in many customer reports of spam, which XMission considers as customer complaints. Specifically:

   a. 5,907 customers spam reports related to 9 Four One emails.

   b. 3,975 customer spam reports related to Above All emails.

   c. 905 customer spam reports related to Affiliati emails.

   d. 1,768 customer spam reports related to Agora Financial emails.

   e. 5,250 customer spam reports related to Fluent emails.

40. Each of the emails in question violates multiple CAN-SPAM provisions.

41. The majority of commercial emails received by XMission, including the emails in question, violate the CAN-SPAM Act in one or more ways, and contributed to a larger spam problem.

## FIRST CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1) – Against Each Defendant**

42. Each of the previous paragraphs is realleged herein.

43. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

44. An email header is materially misleading when it impairs the ability of an Internet access service processing the message on behalf of a recipient to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation, or the ability of a recipient of the message to respond to a person who initiated the electronic message.

SLC_3628862

45. Email headers can be materially misleading in many ways, including as examples when Header Information includes:  false sender email accounts;  false sender names; false sender email addresses; header information that is registered to unrelated third parties; altered or concealed header information that impairs the ability of a party processing the message to identify or respond to the transmitting party; or when header information is accompanied by false WHOIS information, concealed WHOIS information, and/or WHOIS information that that impairs the ability of a party processing the message to identify or respond to the transmitting party.

46. At least 8,848 of the emails from 9 Four One violate 15 U.S.C § 7704(a)(1) in that the Header Information contained or was accompanied by generic from names and false or misleading header information in the form of false or misleading domains, and/or false or misleading registration information.

47. At least 2,819 of the emails from Above All violate 15 U.S.C § 7704(a)(1) in that the Header Information contained or was accompanied by generic from names and false or misleading header information in the form of false or misleading domains, and/or false or misleading registration information.

48. At least 2,903 of the emails from Affiliati violate 15 U.S.C § 7704(a)(1) in that the Header Information contained or was accompanied by generic from names and false or misleading header information in the form of false or misleading domains, and/or false or misleading registration information.

49. At least 2,573 of the emails from Agora Financial violate 15 U.S.C § 7704(a)(1) in that the Header Information contained or was accompanied by generic from names and false

SLC_3628862

or misleading header information in the form of false or misleading domains, and/or false or misleading registration information.

50. At least 3,674 of the emails from Fluent violate 15 U.S.C § 7704(a)(1) in that the Header Information contained or was accompanied by generic from names and false or misleading header information in the form of false or misleading domains, and/or false or misleading registration information.

51. XMission prays for relief in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3).

SECOND CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A) – Against Each Defendant**

52. Each of the previous paragraphs is realleged herein.

53. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. §7704(a)(1).

54. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

55. In order to obtain the domain names from which to send emails, domain registrants are required to provide a name and address to the domain registrar for inclusion in the public WHOIS database.

SLC_3628862

56.     The name and address provided by the domain registrant to the domain registrar constitute material representations.

57.     Any email sent from domains registered with false names and/or addresses violates of §7704(a)(1)(A).

58.     Additionally, any domain registered for a purpose that violates that domain registrar policies violates §7704(a)(1)(A).

59.     The Defendants intended that the domain names were to be used, and the domain names were used, to send spam emails in question.

60.     At least 8,885 of the emails from 9 Four One violate § 7704(a)(1)(A) because they originated from sender domains registered with false information.

61.     At least 6,442 of the emails from Above All violate § 7704(a)(1)(A) because they originated from sender domains registered with false information.

62.     At least 2,903 of the emails from Affiliati violate § 7704(a)(1)(A) because they originated from sender domains registered with false information.

63.     At least 2,573 of the emails from Agora Financial violate § 7704(a)(1)(A) because they originated from sender domains registered with false information.

64.     At least 5,117 of the emails from Fluent violate § 7704(a)(1)(A) because they originated from sender domains registered with false information.

65.     XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1)(A) pursuant to 15 U.S.C. § 7706(g)(3).

SLC_3628862

### THIRD CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(5) – Against Each Defendant**

66. Each of the previous paragraphs is realleged herein.

67. The CAN-SPAM Act requires that every commercial email contain a valid physical postal address of the "sender." 15 U.S.C. § 7704(a)(5)(A)(iii).

68. "Sender" is defined in 15 U.S.C. § 7702(16).

69. Many of the emails pertaining to each Defendant either do not contain any physical address or do not contain a physical address of the "sender" as defined in 15 U.S.C. § 7702(16).

70. Accordingly, XMission prays for relief in the amount of $25 per violation of 15 U.S.C § 7704(a)(5) pursuant to 15 U.S.C. § 7706(g)(3).

### FOURTH CAUSE OF ACTION
**Aggravated Damages – CAN-SPAM Act 15 U.S.C §7706(g)(3)(C) – Against Each Defendant**

71. Each of the previous paragraphs is realleged herein.

72. On information and belief, each of the Defendants committed the violations set forth above willfully and knowingly; or, in the alternative, each of the Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

73. Specifically, Defendants knew that they provided false names and addresses in registering domains from which to send emails in order to avoid detection by spam filtering services, law enforcement and private party plaintiffs such as XMission.

74. Defendant also knew that the physical addresses they provided in the bodies of the emails, if at all, were not the addresses of the "sender" as that term is defined in 15 U.S.C. § 7702(16) and as required by the CAN-SPAM Act.

75. Accordingly, XMission prays for treble damages of the total damage amount determined by this Court.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. Entry of judgment against each Defendant in the amount of $100 per each of their violations of 15 U.S.C. § 7704(a)(1).

B. Entry of judgment against each Defendant in the amount of $100 per each of their violations of 15 U.S.C. § 7704(a)(1)(A).

C. Entry of judgment against each Defendant in the amount of $25 per each of their violations of 15 U.S.C. § 7704(a)(5).

D. Treble damages against each Defendant pursuant to 15 U.S.C. § 7706(g)(3).

E. Attorneys' fees and costs against each Defendant pursuant to 15 U.S.C. § 7706(g)(4).

F. Pre and post-judgment interest at the highest rate permitted by law.

G. Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent email message to XMission and its customers.

H. All other relief deemed just in law or equity by this Court.

DATED this 27th day of February, 2018.

                          DURHAM JONES & PINEGAR, P.C.

                          /s/ Jordan K. Cameron
                          Jordan K. Cameron
                          *Attorneys for Plaintiff*

Plaintiff's Address:
51 East 400 South
Suite 200
Salt Lake City, Utah 84111

SLC_3628862