MARALYN M. ENGLISH (8468)
SCOTT YOUNG (10695)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
P.O. Box 45000
Salt Lake City, UT 84145
Telephone: (801) 521-9000
Facsimile: (801) 363-0400
mme@scmlaw.com
sy@scmlaw.com

LEEOR NETA (*admitted pro hac vice*)
NEWMAN DU WORS LLP
505 Montgomery Street, Eleventh Floor
San Francisco, CA 94111
Telephone: (415) 944-5422
Facsimile: (415) 944-5423
*leeor@newmanlaw.com*

*Attorneys for Defendant Fluent, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company<br><br>    Plaintiff,<br><br>    vs.<br><br>9 FOUR ONE MEDIA, a Florida company; ABOVE ALL OFFERS CORPORATION, an Oregon corporation; THE AFFILIATI NETWORK, INC., a Florida corporation; AGORA FINANCIAL, LLC, a Maryland limited liability company; FLUENT, LLC, a New York limited liability company; DOES 1-10,<br><br>    Defendants. | **DEFENDANT FLUENT, LLC'S MOTION TO DISMISS UNDER RULE 12(b)(6)**<br><br>Case No. 2:18-cv-00182-DBP<br><br>Magistrate Judge Dustin B. Pead |

## DEFENDANT FLUENT, LLC'S 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant Fluent, LLC ("Fluent") hereby files this 12 (b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum of Law in Support Thereof, stating as follows:

## I.     MOTION

Pursuant to Fed. R. Civ. P. 12(b)(2), Fluent hereby moves to dismiss Plaintiff XMission, L.C.'s ("Plaintiff" or "XMission") Complaint for lack of personal jurisdiction. For the reasons set forth below, the Motion to Dismiss should be granted.

## II.    INTRODUCTION

Similar to all other defendants against whom XMission has threatened or brought legal action over the last several years, Fluent is now forced to defend XMission's claims in this foreign forum, where Fluent does not reside, where it does not operate or conduct business activity, and where it has not purposefully directed any conduct, including delivery of emails. This Court, therefore, lacks authority to hear XMission's claims against Fluent.

XMission's complaint makes only generic reference to Fluent. Specifically, XMission alleges personal jurisdiction over Fluent and 13 named and unnamed defendants based on the claim that all Defendants purposefully availed themselves of the privileges of conducting business commercial activity in Utah when they sent emails through servers located in Utah. As to Fluent, however, this assertion is inaccurate.

Fluent does not send emails—let alone to Utah. All of Fluent's employees, officers, property, sales, and operations, along with witnesses, documentary evidence, and documents related to the claims and possible defenses in this case, are in New York—not in this District.

2

Fluent, therefore, lacks substantial, continuous, and systematic contact with Utah or much less, any contact at all.

Moreover, Fluent has not directed any of its commercial activities towards this state, as its commercial operations occur in New York. Fluent has never had any communication with XMission until immediately before XMission filed its claims against Fluent. XMission's claims, therefore, do not arise from Fluent's activities in Utah.

Accordingly, Fluent lacks sufficient minimum contacts with Utah, and the exercise of personal jurisdiction over Fluent in this Court would be unfair and unreasonable. XMission's complaint against Fluent, therefore, must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(2).

### III.   BACKGROUND

1.   Fluent is a New York-based digital-marketing company. Declaration of Daniel J Barsky in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Barsky Decl.") at ¶¶ 2–3. Fluent works with third-party publishers to provide marketing and advertising services. *Id.* at ¶ 3.

2.   Fluent does not send emails. *Id.* at ¶ 6. As is customary in digital marketing, Fluent provides advertising content to third-party publishers. *Id.* at ¶ 4. These third-party publishers maintain sole control over the distribution of emails, and Fluent has no knowledge of where emails are sent or to whom. *Id.* at ¶¶ 5, 6. Nor does it have involvement with, or control over, the origination, approval, or delivery of any emails. *Id.* at ¶ 6.

3.   On February 5, 2018, Fluent received a demand letter from XMission's counsel alleging violations under the federal CAN-SPAM Act, 15 U.S.C. § 7701, *et seq*. ("Act"). Barsky Decl. at ¶ 19. Fluent never had any contact with XMission prior to receiving its letter. *Id.* at ¶ 19.

4. On February 13, 2018, Fluent filed an action against XMission in the Southern District of New York seeking a declaration with respect to XMission's claims in its demand letter. *See* Exhibit A. Two weeks later, on February 28, XMission filed this action against Fluent and other defendants, alleging, among other things, that Fluent was responsible for unsolicited spam emails in violation of the Act. (*See* ECF No. 1)

5. None of Fluent's business activities occur in Utah. *See* Barsky Decl. at ¶ 7. All of Fluent's business activities are in New York. *Id.* at ¶ 2. Fluent has never been registered to do business in the State of Utah. *Id.* at ¶ 8. Fluent has never held any offices, property, assets, telephone listings, or bank accounts in Utah. *Id.* at ¶¶ 9, 11–13, 15. Fluent does not have any employees, members, or managers in Utah, nor does it recruit employees in Utah. *Id.* at ¶¶ 10, 16–17. Fluent does not have any sales personnel in Utah and has never marketed or advertised in Utah. *Id.* at ¶ 14, 17. Fluent also has not targeted or directed internet-marketing efforts at Utah residents. *Id.* at ¶ 14.

6. In fact, while Fluent does not specifically target residents in Utah, it does require that third-party publishers only send emails to customers that have agreed to receive them. *Id.* at ¶ 6. Fluent cannot make any decisions specific to any state, since all emails are sent by third-parties without any input from, or control by, Fluent. *See id.* at ¶¶ 5–6.

7. Additionally, the revenue Fluent has generated from Utah is negligible. Less than 0.9% of its total revenue stems from Utah residents who responded to digital advertising. *Id.* at ¶ 18. Although Fluent maintains a website that is accessible by anyone, anywhere, this website

does not contain information geared towards Utah residents or consumers in general.[1] The website does not offer or facilitate any consumer transactions. *Id.*

### IV.     DISCUSSION AND CITATION TO AUTHORITY

A court may dismiss a claim for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. When jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). To defeat a motion to dismiss, a plaintiff must make a prima facie showing of personal jurisdiction. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). A "prima facie showing" means "demonstrating, via affidavit or other written materials, facts that if true" would support jurisdiction over the defendant if true. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998). A defendant does not bear the burden of demonstrating unreasonableness of personal jurisdiction unless and until the plaintiff has first established minimum contacts exist. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The facts here do not support jurisdiction over Fluent, and XMission's claims against it should be dismissed.

**A.     Fluent is not subject to general jurisdiction because it does not have substantial, continuous, systematic contacts in Utah.**

General jurisdiction is appropriate only if the defendant's contacts with the forum are so "continuous and systematic" that it is "at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Courts in the Tenth Circuit examine four factors to assess whether a company's forum contacts are sufficient to exercise general

---

[1] *See* Fluent Homepage, http://www.fluentco.com (last visited Mar. 19, 2018).

jurisdiction, including whether the company: (1) solicits local business through a local office or agents; (2) regularly sends agents into the state to solicit business; (3) holds itself out as doing business locally through advertisements, listings or bank accounts; and (4) conducts significant business in the state. *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001).

In *Zoobuh, Inc. v. Williams*, this Court refused to exercise general jurisdiction over an out-of-state digital-marketing company that—like Fluent—had been sued under the Act. No. 2:13-CV-791 TS, 2014 WL 7261786, at *10 (D. Utah Dec. 18, 2014). Defendant Thrive was a Tennessee digital-marketing company selling and renting email-marketing lists to clients. *Id.* at *1. Thrive did not have (1) offices in Utah; (2) agents or regular sales personnel in Utah; (3) property, assets, telephone listings, or bank accounts In Utah; (4) employees, members, or managers in Utah; (5) or a registration to do business in Utah. *Id.* Thrive's lack of contacts was further demonstrated by the fact that less than 1% of its sales revenue was derived from Utah customers. *Id.* All four factors indicated that Thrive was not subject to general jurisdiction. *Id.* at *4.

Furthermore, Thrive was not involved with emails sent on its behalf. *Id.* at *1. Instead— like Fluent—Thrive gave advertising content to third-party publishers, and those publishers maintained full control over distribution of Thrive's emails. *Id.* at *1. It did not matter that Thrive's emails had reached the forum state. *Id.* at *3. The Utah District Court nevertheless dismissed for lack of personal jurisdiction.

Here, as in *Zoobuh*, the factors all weigh against exercising general jurisdiction over New York-based Fluent: (1) Fluent has never solicited Utah business through a local office or agent or otherwise directly marketed or advertised to Utah residents (Barsky Decl. at ¶¶ 7, 9–10, 14, 17); (2) Fluent has never sent agents into Utah to solicit business (*id.* at ¶¶ 10, 17); (3) Fluent has never held itself out as doing business or held any property, assets, telephone listings, or bank accounts in Utah (*id.* at ¶¶ 7, 9, 11–13, 15); and (4) Fluent has never registered to do business in Utah, has never had employees, members, or managers in Utah, and derives less than 0.9% of its sales from Utah end customers. (*id.* at ¶¶ 7–10, 16). There is no basis for exercising general jurisdiction over Fluent.

**B.     Fluent is not subject to specific jurisdiction because it has not purposefully directed any conduct toward Utah relating to this action**

A defendant not subject to general jurisdiction can only be subject to personal jurisdiction on claims related to its "minimum contacts" with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Specific-jurisdiction analysis focuses on the relationship between the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). A plaintiff can only satisfy the minimum-contacts test by showing that both: (1) the defendant purposefully directed activities at residents of the forum state; and (2) the plaintiff's claim arises out of the defendant's forum-related activities. *Old Republic*, 877 F.3d at 904.

Only the contacts defendant itself created with the forum state are relevant. *Walden*, 134 S. Ct. at 1122 (citing *Burger King*, 471 U.S. at 475). In other words, the plaintiff "cannot be the only link between the defendant and the forum." *Id.* The conduct giving rise to the suit must also have a "substantial connection with the forum State." *Id.* at 1121. Moreover, these requirements

must be satisfied for each defendant independently. *Id.* at 1123 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

### 1. Fluent has never "purposefully directed" activities at Utahns.

The purposeful-direction requirement "ensures that a defendant will not be haled into court solely as result of 'random,' 'fortuitous,' or 'attenuated' contacts, … or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The Tenth Circuit analyzes purposeful direction under three frameworks, a defendant's (1) continuing relationships with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) intentional direction of harmful effects in the forum state ("harmful effects"). *Old Republic*, 877 F.3d at 905. None of the frameworks indicate that Fluent "purposefully directed" activities at this forum.

First, the ***continuing relationships*** framework asks whether one party reached out beyond one state to create continuing relationships with citizens in another state. *Burger King*, 471 U.S. at 473. This framework is inapplicable—Fluent does not have relationships with Utah residents.

Second, the ***market exploitation*** framework requires "continuous and deliberate exploitation of the forum state market." *Old Republic*, 877 F.3d at 914. Relevant factors include: "(a) high sales volume and large customer base and revenues, and (b) extensive nationwide advertising or ads targeting the forum state." *Id.* at 915. The Tenth Circuit has held that a total of $5,000 in annual membership revenues from forum residents is too insignificant to establish "minimum contacts" with the state. *Id.* The same is true where only three out of four hundred

emails reach Utah. *Hydro Eng'g, Inc. v. Landa, Inc.*, 231 F. Supp. 2d 1130, 1135–36 (D. Utah 2002).

Fluent's activities do not constitute "continuous and deliberate exploitation" of Utah's market. Fluent's revenues from Utah customers are insignificant, totaling less than 0.9% of its annual revenues. Barsky Decl. at ¶ 18. Fluent has never continuously and deliberately exploited the Utah market. *Id.* at ¶ 14. Fluent does not even control the distribution of emails, let alone target Utah residents with internet marketing. *Id.* at ¶ 6. Given that Utah represents a miniscule portion of Fluent's revenues, there is no basis to conclude that Fluent deliberately sought to exploit the Utah market.

Third, the ***harmful effects*** analysis requires the plaintiff to demonstrate how the injury connects the defendant to the forum in a "meaningful way." *Walden*, 134 S. Ct. at 1125. It is insufficient to merely show that a forum resident suffered an injury. *Id.* In the internet context, the defendant must have "deliberately directed its message" at the forum state and intended to harm the plaintiff there. *Old Republic*, 877 F.3d at 917. A passive webpage that is not directed at the forum is insufficient. *Id.* at 917. Nor is the forum targeted when only a small fraction of a defendant's sent emails reach that state. *Hydro Eng'g*, 231 F. Supp. at 1136.

Furthermore, emails sent within the forum by a third-party publisher do not establish that a defendant "expressly aimed" those emails at the forum. *Zoobuh*, 2014 WL 7261786, at *4–5. Without defendant knowing where the third-party had sent the emails and where they would be delivered, the plaintiff cannot show that the defendant was aware "the brunt of the injury would be felt in the forum state." *Id.* at *4–5. Absent "involvement with, or control over, the origination, approval, or delivery of the emails," or knowledge of where emails are sent, the

9

third-party publisher's contacts cannot be imputed to the defendant. *Id.* at *5. Without evidence showing otherwise, these facts are insufficient to find that a defendant had purposefully directed activities at the forum. *Id.* At best, this shows contacts between "third-party publishers and Utah." *Id.*

Here, XMission claims that it was injured in Utah by unlawful emails. Yet, it fails to demonstrate how this injury meaningfully connects Fluent to Utah. There is no evidence to demonstrate that Fluent "deliberately directed" any emails at Utah residents. Like Thrive—the defendant in *Zoobuh*—Fluent has no involvement with, or control over the approval or delivery of emails sent by third-party publishers. Nor does Fluent know where emails are being sent or to whom. XMission claims that some of the email addresses listed in the Complaint contain "Utah," implying that this demonstrates purposeful direction. However, there is nothing in those addresses that indicates they were received within Utah. Courts have declined to extend specific jurisdiction to defendants that send emails without knowing the recipient's residence or where the email will be received. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011); *Fenn v. Mleads Enters., Inc.*, 137 P.3d 706, 708 (Utah 2008). Because Fluent did not know that any emails were reaching Utah residents, no activities were "expressly aimed" at Utah. As in *Zoobuh*, nothing shows that Fluent purposefully directed the allegedly harmful emails at Utah. The effects test is not satisfied because Fluent had no intent.

    **2.**     **XMission's claim does not arise out of any Fluent contacts with Utah.**

A plaintiff must also demonstrate some affiliation between the defendant's activity in the forum and the underlying controversy. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. at 1776. The controversy must arise out of contacts that the

defendant itself makes. *Walden*, 134 F.3d at 1118. "[T]he mere fact that [a defendant's] conduct affect[s] plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. The Tenth Circuit requires a "substantial" connection between the defendant's contacts and the claim. *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016). XMission cannot demonstrate that its alleged injuries arise out of any Fluent contacts with Utah.

XMission claims it was injured because of email received at its servers. But Fluent did not create that email, send that email, or even select the recipients for that email. Barsky Decl. at ¶¶ 5–6. Fluent does not conduct any marketing or advertising in Utah and has never targeted or directed any internet marketing directly to Utah residents. *Id.* at ¶ 14.

Moreover, the alleged injury was related to and arose from the actions of third-party publishers acting without Fluent's involvement or knowledge, and against Fluent's specific instructions to only contact recipients who have consented. *See id.* at ¶¶ 5–7. A plaintiff's claim does not arise from the defendant's forum contacts where the alleged injury stemmed from the defendant's conduct with a third party. *See Anzures*, 819 F.3d at 1281. In *Anzures*, the plaintiff was harmed by an out-of-state defendant's misrepresentations and tortious conduct relating to a third party, the plaintiff's employer. *Id.* at 1279, 1281. This conduct did not create contacts with the forum state—so the plaintiff's claim did not arise from the defendant's conduct with the forum state. *See id.* at 1281. Similarly, because Fluent has not created any contacts with Utah, there can be no substantial connection with XMission's claim.

### C. The "fairness factors" do not support personal jurisdiction over Fluent.

Even if XMission can meet its prima facie burden, the Court cannot exercise personal jurisdiction if doing so would "offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 908–09 (quoting *Shrader*, 633 F.3d at 1240).

The Tenth Circuit examines five factors in determining whether the exercise of personal jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holdings*, 149 F.3d at 1096 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987)). The relevant factors all weigh against exercising personal jurisdiction.

#### 1. Fluent would be significantly burdened if required to defend this case in a distant jurisdiction with which it has no connections.

First, although the defendant's burden is not dispositive, it is given "special significance" because of its role in preventing the "filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings*, 149 F.3d at 1096. This factor strongly favors a defendant that operates a considerable distance from the forum state, possesses no license to conduct business in the forum state, and has no offices, employees, or agents in the forum state. *Id.* at 1096. The first factor also favors a defendant that would be forced to litigate in a distant state in which it maintained "very limited contacts." *Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F. Supp. 2d 1271, 1290 (N.D. Okla. 2011).

New York-based Fluent is not registered to conduct business in Utah, does not direct any marketing or advertising at Utah, and has never had offices, employees, or agents in Utah. Barsky Decl. at ¶¶ 7–17. Fluent would be required to travel across the country to litigate this case. Given Fluent's lack of connections and considerable distance from Utah, this factor weighs heavily in Fluent's favor.

### 2. Utah has little interest in adjudicating XMission's federal commercial-email claims.

The second factor analyzes the forum state's interest in adjudicating the suit. *OMI Holdings*, 149 F.3d at 1096. This factor favors the defendant when the claims did not involve the forum state's laws. *Id.* at 1096. XMission's claim under the federal CAN-SPAM Act does not involve Utah law. Therefore, this factor also favors Fluent.

### 3. XMission could receive convenient and effective relief in another forum.

The third factor asks whether the plaintiff would be able to receive convenient and effective relief in an alternative forum. *OMI Holdings*, 149 F.3d at 1097. Courts also consider whether litigating elsewhere would be "'prohibitive' or 'so overwhelming as to practically foreclose pursuit of the lawsuit.'" *Delta Stone Prods v. Xpertfreight*, No. 2:16-CV-369-CW-EJF, 2017 WL 3491845, at *8 (D. Utah Aug. 14, 2017). Where another forum may be equally as effective in providing relief, this factor favors the defendant. *OMI Holdings*, 149 F.3d at 1097.

Given that XMission's claim involves nationwide federal law, convenient and effective relief could be obtained in other forum. Litigating the claim in another court is also highly unlikely to be so prohibitive as to prevent XMission from pursuing its claims. This third factor favors Fluent.

### 4. XMission's claims against Fluent would be more efficiently resolved in another forum.

Resolution of the fourth factor looks at four questions: (1) whether the forum state is the most efficient place to litigate the dispute; (2) where the wrong underlying the lawsuit occurred; (3) what forum's substantive law governs the case; and (4) whether jurisdiction is necessary to prevent piecemeal litigation. *OMI Holdings*, 149 F.3d at 1097.

Each of these questions is resolved in Fluent's favor. Nothing suggests that Utah would be the most efficient place to litigate the claim, as each party is likely to have evidence in its home state. Arguably, the alleged wrong that occurred—sending unsolicited spam emails in violation of federal law—occurred outside of Utah. Furthermore, XMission could litigate its entire claim elsewhere. This factor also favors Fluent. The fifth factor is neutral.

Since most, if not all, of these factors weigh in Fluent's favor, exercising personal jurisdiction would be unreasonable. The weaker the defendant's contacts with the forum state, the less the defendant needs to show that exercising personal jurisdiction would be unreasonable. *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007).

Even if only three out of the five factors favor the defendant, the contacts with the forum state are too tenuous to support jurisdiction. *Riddle & Assocs., P.C. v. Morcos*, No. 2:06CV972, 2007 WL 2061054, at *5 (D. Utah July 12, 2007). The result here should be the same because Fluent has no contacts with Utah and most of the factors weigh in its favor.

### V. CONCLUSION

In view of the foregoing, the Court lacks personal jurisdiction over Fluent, and Fluent's Motion to Dismiss must be granted pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Respectfully submitted this 22nd day of March, 2018.

               SNOW CHRISTENSEN & MARTINEAU

               */s/ Maralyn M. English*
               Maralyn M. English
               Scott Young

               Leeor Neta (*admitted pro hac vice*)
               NEWMAN DU WORS LLP
               505 Montgomery Street, Eleventh Floor
               San Francisco, CA 94111
               Telephone:  (415) 944-5422

               *Attorneys for Defendant Fluent, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2018, I electronically filed the foregoing **DEFENDANT FLUENT, LLC'S MOTION TO DISMISS UNDER RULE 12(b)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

                                                   /s/ Maralyn M. English

4846-9160-5855, v. 1