# Exhibit A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLUENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ZOOBUH, INC., a Utah corporation and XMISSION LLC a Utah limited company, <br><br> Defendants. | Case. No. _____ <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Fluent, LLC ("Fluent"), by and through its attorneys, Klein Moynihan Turco LLP, as and for a Complaint against Defendants ZooBuh, Inc. ("ZooBuh") and XMission LLC ("XMission") and Does 1-50 (collectively, "Defendants") allege that at all times hereinafter mentioned:

## I. PRELIMINARY STATEMENT

This is an action pursuant to 28 U.S.C. §§ 2201 and 2202 for declaratory judgment and other necessary and proper relief in connection with Fluent's business practices of online marketing and advertising, which Defendants allege violate the CAN-SPAM Act, 15 U.S.C, § 7701, et seq. (the "CAN-SPAM Act" or the "Act"). Fluent contends that: (1) Defendants do not have standing to pursue their claims against Fluent under the Act because (a) neither Defendant is an internet access service provider and (b) Defendants have not been "adversely affected" within the meaning of the Act; (2) Fluent did not initiate or procure the transmission of, or otherwise send, the emails of which Defendants complain; and (3) the headers and content of the emails forming the basis of Defendants' allegations do not violate the CAN-SPAM Act. Fluent thereby seeks three counts of declaratory judgment on each of these grounds. Fluent also seeks recovery of its attorney's fees and costs incurred in connection with this action.

{00129667;1}1

## II. PARTIES

1. Fluent is a Delaware limited liability company with its principal place of business in New York, New York.

2. Defendant ZooBuh is a Utah corporation with its principal place of business in Cedar Hills, Utah. ZooBuh may be served through its registered agent, Franklin A. Fullmer at 10616 Bermuda, Cedar Hills, Utah 84062, or upon any other officer or agent authorized by law to receive service of process.

3. Defendant XMission LLC is a Utah limited company with its principal place of business in Salt Lake City, Utah. XMission may be served through its registered agent, Peter L. Ashdown, 51 East 400 S, Suite 200, Salt Lake City, Utah 84111 or upon any other officer or agent authorized by law to receive service of process.

4. Fluent is unaware of the true names and capacities of the defendants identified as Does 1-50 and therefore sue those defendants under fictitious names. Fluent will amend this complaint to allege their true names and capacities when ascertained. Each of the fictitiously-named defendants is responsible for the conduct alleged herein. These fictitiously-named defendants, along with the other named defendants, are referred to collectively as "Defendants."

## III. JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332 (diversity). Furthermore, Fluent seeks declaratory relief under 28 U.S.C. § 2201 based on Defendants' allegations that Fluent has violated a federal statute, the CAN-SPAM Act, 15 U.S.C. § 7701, et seq.

6. The Court has personal jurisdiction over Defendants because each does substantial, continuous and systematic business in New York and has customers nationwide, including in the State of New York. Defendants have personally availed themselves of the privileges of conducting business in New York and therefore, have subjected themselves to the jurisdiction and laws of New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to Defendants' claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Fluent Ensures Compliance with Federal and State Laws, Including the CAN-SPAM Act.

8. Fluent is a digital marketing company that works with third-party publishers to provide marketing and advertising services.

9. As is common in its industry, Fluent participates in advertising and marketing campaigns utilizing third-party publishers. In such campaigns, an advertiser provides advertising content to publishers, and the publishers then distribute the advertisements to their audiences via email, among other methods. The advertiser compensates the publishers based on certain agreed-upon triggering actions by the target consumers such as when the consumer "clicks" on the advertisement, visits a designated website, or purchases the advertised product or service. In these marketing campaigns, including those engaged in by Fluent, all commercial emails are sent to consumers by the publishers, not by Fluent.

10. Fluent has diligently implemented and enforced numerous policies and procedures designed to ensure that these third-party marketing campaigns comply with all federal and state laws governing online advertising activities, including the CAN-SPAM Act. Fluent's compliance efforts include: (i) working with a small number of carefully-chosen publishers with strong reputations for complying with all applicable laws; (ii) requiring all publishers to enter a contract that strictly regulates the publishers' actions and the conduct of any third parties (i.e., affiliates) authorized to send emails, including requiring strict compliance with the CAN- SPAM Act; (iii) using internal and/or third-party technology to monitor emails sent by publishers and implement email suppression lists and unsubscribe actions; (iv) enforcing its contractual rights, including in some cases the termination of offending publishers or affiliates; and (v) actively managing suppression lists of email addresses whose owners have opted out of receiving or unsubscribed from future emails. Fluent's personnel devote extensive time, money and resources to overseeing these compliance efforts.

11.     As a result of these practices, Fluent is able to rigorously monitor the advertising behavior of publishers.

**B.      Defendants' Business and History as Serial Spam Plaintiffs.**

12.     Defendant ZooBuh is a small business operated by a husband and wife out of their residence. ZooBuh was incorporated in 2007 and purports to offer email services, blog hosting, and chat services to customers in all 50 states, including New York. According to the Utah Secretary of State, the address of ZooBuh's business and its registered agent for service of process is the same as the address of its founder, Alan Fullmer, which ZooBuh also shares with other businesses owned by Fullmer.

13.     Similarly, Defendant XMission is a small business with one office and one data center. XMission was founded in 2003 and purports to offer high-speed Internet, ethernet, VOIP and phone to customers in numerous states, including New York. According to the Utah Secretary of State, the address of XMission's business and its registered agent for service of process is the same as the address of its founder, Peter Ashdown.

14.     The customer base for both Defendants has been fairly static over the last few years. As a result, Defendants have attempted to supplement their struggling business and stagnant revenue by becoming professional spam plaintiffs. To illustrate:

   a.   On May 13, 2011, ZooBuh sued Smoke Freely, LLC, Stacked, LLC, Killian Capital Partners, LLC, Then There Were Two, LLC and Ted Davenport in the U.S. District Court for the District of Utah. ZooBuh alleged that between January 2011 and June 2011, the defendants sent at least 17,398 emails to ZooBuh's customers that violated the CAN-SPAM Act. *See ZooBuh, Inc. v. Smoke Freely, LLC*, No. 2:11-cv-00439-CW (D. Utah May 13, 2011).

   b.   On June 7, 2011, ZooBuh sued Better Broadcasting, LLC, Iono Interactive, and Envoy Media, Inc. in the U.S. District Court for the District of Utah. ZooBuh alleged that between January 2011 and

November 2011 the defendants sent at least 12,883 emails to ZooBuh customers in violation of the CAN-SPAM Act. *See ZooBuh, Inc. v. Better Broadcasting*, No. 2: 11-cv-00516 (D. Utah, June 7, 2011).

c. On December 28, 2011, ZooBuh sued Smokeless Cigarette, LLC, Cigirex, LLC and AKMG, Inc. in the U.S. District Court for the District of Utah. ZooBuh alleged that between January 2011 and April 2012 the defendants sent at least 21,597 emails to ZooBuh customers that violated the CAN-SPAM Act. *See ZooBuh, Inc. v. Smokeless Cigarette, LLC*, No. 2:11-cv-0121 (D. Utah, Dec. 28, 2011).

d. On January 18, 2012, ZooBuh sent a demand letter to Adknowledge, Inc., alleging that over a several-month period in 2011, Adknowledge sent ZooBuh customers over 100,000 emails, many of which violated the CAN-SPAM Act. After receiving several demand letters, Adknowledge sued ZooBuh and Fullmer in the U.S. District Court for the Central District of California for declaratory relief. *See Adknowledge, Inc. v. ZooBuh, Inc.*, No. 2:12-cv-01656-R-VBK (C.D. Cal Feb. 27, 2012).

e. On April 25, 2012, Clickbooth.com, LLC received a demand letter from ZooBuh, alleging that Clickbooth sent or caused to be sent approximately 22,489 emails to ZooBuh's mail servers over a several-month period in 2011 and that many of those emails violated the CAN-SPAM Act. Clickbooth then filed suit against ZooBuh in the U.S. District Court for the Middle District of Florida on May 8, 2012, seeking declaratory relief. *See Clickbooth.com, LLC v. ZooBuh, Inc.*, No. 8:12-cv-01021-RAL-AEP (M.D. Fla. May 8, 2012).

f. In 2011, ZooBuh sent a demand letter to Vistaprint, alleging that Vistaprint violated the CAN-SPAM Act and demanding a substantial settlement payment from Vistaprint. On June 19, 2012, Vistaprint sued

{00129667;1}5

ZooBuh in the U.S. District Court for the District of Massachusetts, seeking declaratory judgment that Visaprint did not violate the CAN-SPAM Act. *See Vistaprint USA, Inc. v. ZooBuh, Inc.*, No. 1:12-cv-11094-GAO (D. Mass June 19, 2012).

g. In 2012, ZooBuh sent multiple demand letters to Match.com, LLC, alleging violations of the CAN-SPAM Act and demanding a substantial settlement payment. On November 6, 2012, Match.com, LLC filed a declaratory judgment lawsuit in the U.S. District Court for the Northern District of Texas, seeking a declaration that it did not violate the CAN-SPAM Act. *See ZooBuh, Inc. v. Match.com, LLC*, No. 3:12-cv-04472-8 (N.D. Tex. Nov. 16, 2012).

h. In 2013, ZooBuh sent multiple demand letters to Millionaire Network, LLC, alleging violations of the CAN-SPAM Act and demanding a substantial settlement payment. On May 20, 2013, Millionaire Network filed a declaratory judgment lawsuit in the U.S. District Court for the Northern District of Texas, seeking a declaration that it did not violate the CAN-SPAM Act. *See ZooBuh, Inc. v. Millionaire Network, LLC*, No. 3:13-cv-01899-8 (N.D. Tex. May. 20, 2013).

i. On April 21, 2015, XMission sued Adknowledge, Inc.—a previous victim of ZooBuh's threat—in the U.S. District Court for the District of Utah. Like ZooBuh, XMission alleged that Adknowledge sent at least 61,391 emails to XMission's customers that violated the CAN-SPAM Act. *See XMission, L.C. v. Adknowledge, Inc.*, No. 2:15-cv-00277 (D. Utah, Apr. 21, 2015).

j. In 2015, XMission sent a demand letter to Accelerize, Inc., alleging violations of the CAN-SPAM Act and demanding a substantial settlement payment. On May 14, 2015, Accelerize filed a declaratory judgment

lawsuit in the U.S. District Court for the Central District of California, seeking a declaration that it did not violate the CAN-SPAM Act. *See Accelerize, Inc. v. XMission, L.C. et al.*, No. 8:15-cv-00758 (C.D. Cal. May 14, 2015).

k. Defendants have continued this pattern and practice of filing meritless boilerplate CAN-SPAM Act complaints in the District of Utah against additional companies such as Cupid.com, Alcuda, LTD, One Technologies, and Rainbow International, Inc. *See ZooBuh, Inc. v. Cupid PLC*, No. 2:13-cv-00791 (D. Utah Aug. 26, 2013); *ZooBuh, Inc. v. Alcuda*, No. 2:14-cv-228 (D. Utah March 27, 2014); *ZooBuh, Inc. v. One Techs., LLC*, No. 2:14-cv-228 (D. Utah May 5, 2014); *ZooBuh, Inc. v. Ranbow Int'l, Inc.*, No. 2:14-cv- 00477 (D. Utah June 27, 2014).

15. In view of the foregoing, Defendants have essentially followed the same pattern of sending one or more demand letters that threaten litigation and request exorbitant settlement payments. If Defendants are not paid off in response to these threats, they file suit in the District of Utah.

16. Defendants utilize a carbon-copy complaint with virtually identical factual allegations and the same legal claims each time. For instance, each complaint that Defendants have filed under the Act alleges that as a result of receiving the allegedly unlawful emails at issue, Defendants have had to create custom SPAM filtering software, have had to dedicate additional hours to dealing with SPAM related issues, have received customer complaints, have lost customers, and have experienced server spikes, server slowdowns, and crashes inhibiting Defendants' ability to fulfill their contractual obligations with their customers.

17. Defendants appear to have quickly settled nearly every case they have brought before having to engage in discovery.

18. Neither Defendant continues to run a profitable business. Neither of them make money other than from threatening and filing lawsuits. That is all they do.

{00129667;1}7

## C. Defendants Demand Money from Fluent and Threaten Litigation for Violation of the CAN-SPAM Act.

19. Consistent with their pattern of abuse, Defendants, though their attorney, Jordan Cameron, sent Fluent a generic demand letter on February 5, 2018 (the "Letter"), alleging that Fluent, as a "Sender" within the meaning of the Act, sent approximately 10,000 emails in violation of the CAN-SPAM Act, and requesting that it and Fluent reach a pre-litigation settlement of Defendants' putative claims and alleged million-dollar damages.

20. While the Letter is generic and seeks only "a pre-litigation resolution," the volume of emails at issue suggests that Defendants systematically collected emails over time so as to support a large statutory damages calculation before raising an alarm. This is in sharp contrast with the behavior of bona fide businesses or customers who immediately complain about, and delete, unwanted email.

21. Based on Defendants' pattern of bringing litigation to extract settlement payments, it is clear that Defendants are strategically seeking and collecting "evidence" of alleged CAN-SPAM Act violations so that they can financially benefit as professional litigants and not to remedy any actual harm they have suffered.

22. Neither Fluent nor the headings and content of the emails at issue, however, violate the CAN-SPAM Act.

23. Moreover, the "damages" alleged by Defendants in the Letter to Fluent and in other lawsuits (e.g., network crashes and slowdowns) may be wholly attributable to insufficient bandwidth, equipment, and filters—the types of issues that struggling businesses with insufficient capital regularly face. These are the same damages Defendants have claimed in numerous other lawsuits spanning several years. And they are the same damages that Defendants should have by now remedied.

24. As a result of Defendants' repeated demands and threats of imminent litigation, Fluent files this lawsuit and seeks a declaration of its rights and status under the CAN-SPAM Act, pursuant to the Declaratory Judgment Act and Federal Rule of Civil Procedure 57.

{00129667;1}8

## AS AND FOR A FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT
### 28 U.S.C. § 2201 *et seq.*

25. Fluent repeats and incorporates by reference the allegations made in paragraphs 1 through 24.

26. There is an actual and justiciable controversy between the parties. Defendants have sent a demand letter to Fluent seeking resolution of a dispute based on claims that Fluent failed to comply with the CAN-SPAM Act.[1]

27. Defendants lack standing to bring suit under the CAN-SPAM Act to the extent either does not qualify as an Internet access service provider (an "IAS") or with respect to Zoobuh, an email service provider ("ESP"). Only IASs and ESPs have a private right of action under the CAN-SPAM Act.

28. Even if Defendants qualify as IASs or ESPs, they still lack standing to bring suit against Fluent because they have not been adversely affected by any alleged violation of the CAN-SPAM Act by Fluent.

29. Therefore, an actual and justiciable controversy exists between Fluent and Defendants as to: (a) whether Defendants qualify as IASs under the CAN- SPAM Act and if so: (b) whether Defendants were "adversely affected" by any violation of the CAN-SPAM Act attributable to Fluent.

30. A determination as to whether Defendants have standing to bring suit under the CAN-SPAM Act would resolve this controversy. Fluent thereby requests a declaration that Defendants lack standing to bring suit under the CAN-SPAM Act.

## AS AND FOR A SECOND CAUSE OF ACTION
### DECLARATORY JUDGMENT
### 28 U.S.C. § 2201 *et seq.*

31. Fluent repeats and incorporates by reference the allegations made in paragraphs 1 through 28.

---

[1] Because Defendant has not served or properly named Fluent, Fluent still considers the litigation against it imminent.

32. There is an actual and justiciable controversy between the parties. Defendants have sent a demand letter to Fluent threatening imminent litigation based on allegations concerning Fluent's compliance with the CAN-SPAM Act.[2]

33. Fluent does not advertise or promote its own products, services, or Internet websites in any of the emails of which Defendants complain.

34. Fluent enters into agreements with certain publishers to email advertising content to third parties on behalf of its clients and requires that the publishers strictly comply with all federal and state laws, including the CAN-SPAM Act.

35. Fluent monitors and enforces compliance with these agreements through numerous practices, policies, and compliance personnel. The advertising content provided to publishers in connection with the emails of which Defendants complain fully complied with the CAN-SPAM Act.

36. Third-party publishers transmitted the emails that give rise to Defendants' allegations. Fluent did not initiate or procure the transmission of, or send, the emails at issue.

37. In the event that third-party publishers sent commercial emails in violation of the CAN-SPAM Act, Fluent did not know, or intentionally avoid knowing, that any publishers were violating the CAN-SPAM Act.

38. Accordingly, even if Defendants have standing to sue under the CAN-SPAM Act, Fluent did not send, initiate, or procure any of the emails about which Defendants complain. Therefore, an actual and justiciable controversy exists between Fluent and Defendants as to whether Fluent sent, initiated, or procured the complained of emails under the CAN-SPAM Act.

39. A determination as to whether Fluent is a sender, initiator, or procurer under the CAN-SPAM Act would resolve this controversy. Thus, Fluent requests a declaration that Fluent did not "initiate" or "procure" the sending of the emails about which Defendants complain, as those terms are defined in the CAN-SPAM Act.

---

[2] *See id.*

## AS AND FOR A THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT
### 28 U.S.C. § 2201 *et seq.*

40.     Fluent repeats and incorporates by reference the allegations made in paragraphs 1 through 37.

41.     There is an actual and justiciable controversy between the parties. Defendants have sent a demand letter to Fluent threatening imminent litigation based on allegations concerning Fluent's compliance with the CAN-SPAM Act.

42.     The emails forming the basis of Defendants' allegations comply with § 7704(a)(5) of the Act, as they include in the body of each email: (1) a clear and conspicuous identification that the message is an advertisement or solicitation; (2) a clear and conspicuous notice of the opportunity to opt out of or unsubscribe from email from the "Sender"; and (3) a clearly and conspicuously displayed physical postal address of the designated "Sender."

43.     The emails forming the basis of Defendants' allegations also comply with § 7704(a)(1) of the CAN-SPAM Act, as they display name and contact information to permit the recipient to identify, locate, or respond to the person who initiated the emails.

44.     The emails forming the basis of Defendants' allegations also comply with § 7704(a)(2) of the CAN-SPAM Act, as their subject headings clearly identified the emails as advertisements.

45.     Therefore, an actual and justiciable controversy exists between Fluent and Defendants as to whether the subject headings and bodies of the emails at issue violate the CAN-SPAM Act. A determination of whether the emails of which Defendants complain violate the CAN-SPAM Act would resolve this controversy. Fluent, therefore, requests a declaration that the emails forming the basis of Defendants' allegations do not violate the CAN-SPAM Act.

### V.     REQUEST FOR RELIEF

WHEREFORE, Fluent respectfully requests that the Court enter judgment in its favor and grant Fluent the following relief:

(a)     Pursuant to 28 U.S.C. § 2201, declarations that: (1) Defendants lack standing to

{00129667;1}11

bring suit under the CAN-SPAM Act; (2) Fluent did not send, initiate, or procure any of the emails of which Defendants complain; and (3) the emails forming the basis of Defendants' allegations do not violate the CAN-SPAM Act;

(b) Judgment against Defendants for attorney's fees and court costs; and Such other and further relief, at law and in equity, to which Fluent may be entitled.

Dated: New York, New York
February 13, 2018

*Counsel for Fluent, LLC*

Neil E. Asnen, Esq. (NA 1863)
KLEIN MOYNIHAN TURCO LLP
450 Seventh Avenue, 40th Floor
New York, NY 10123
(212) 246-0900
nasnen@kleinmoynihan.com

and

/s/ Leeor Neta
Leeor Neta (*pro hac vice* application forthcoming)
Newman Du Wors LLP
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
Tel: (415) 944-5422
leeor@newmanlaw.com

{00129667;1}12